IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MICHAEL KILLION, et al.<br><br>               Plaintiffs,<br><br>  v.<br><br>CHIEF JOHN COFFEY, et al.<br><br>              Defendants. | Civil No. 13-1808-RMB-KMW<br><br>**MEMORANDUM OPINION** |

**Williams, Magistrate Judge:**

This matter is before the Court on the Motion of Defendants, Chief John Coffey ("Coffey") and Lieutenant Michael Probasco ("Probasco") (collectively, "Defendants"), to disqualify Katherine D. Hartman, Esquire and her firm, Attorneys Hartman, Chartered, from representing Plaintiffs, Michael Killion, Michael Biazzo, Douglas Foster, Socrates Kouvatas, Erik Morton, William Hertline, and Mark Bristow, in this matter [Doc. No. 29]. The Court notes that Plaintiffs oppose this Motion. The Court held a hearing in this matter on June 3, 2014. The Court has reviewed the submissions of the parties and for the reasons that follow, Defendants' Motion is denied.

**BACKGROUND**

The following facts are from the certifications submitted to the Court in support of the current Motion and in opposition thereto. By letter dated December 17, 2011, Katherine D. Hartman, Esquire, ("Hartman") advised all members of the FOP Lodge 3 ("FOP") that she and her firm, Attorneys Hartman, Chartered ("the Firm"), had been retained to represent the interests of the FOP beginning in January 2012. Declaration of John Coffey ("Coffey Decl.") ¶ 5, Ex. A, Doc. No. 29-6. In the letter, Hartman stated, in relevant part:

> Dear Member:
> My name is Katherine (Katie) Hartman and I have been retained to represent your interests beginning in January. . . While my primary function is to represent those of you who may have disciplinary charges filed against you, I encourage you to call me to [sic] if you have any questions at all relating to the performance of your duties, a potential problem at the workplace, or if you are notified that you are the target of an Internal Affairs investigation.

*Id.* ¶ 6, Ex. A. The FOP and Hartman, for the Firm, entered into an "Agreement for Legal Services Between FOP Lodge 3 And Attorneys Hartman, Chartered" ("Legal Services Agreement" or "Agreement") wherein Hartman and her firm agreed to act as counsel for members of the FOP from January 1, 2012 through December 31, 2012. *Id.*, Ex. B. As stated in the Legal Services Agreement, "Attorneys Hartman, Chartered shall act

as counsel for the Members of FOP Lodge 3, who **require** legal assistance with Administrative and/or Disciplinary matters." *Id.*, Ex. B(emphasis added). Further, the Agreement provides that "Attorneys Hartman, Chartered and Katherine D. Hartman will provide legal services for all members of FOP Lodge 3, **if** they . . . have questions relating to the performance of their duties and/or potential employment and/or disciplinary matters." *Id.*, Ex. B ¶ 1(h)(emphasis added). The Agreement did not contemplate coverage for affirmative legal action in the form of a civil lawsuit. *Id.*, Ex. B, ¶ 1(h)(2). Pursuant to the Agreement, "[t]he FOP Lodge 3 agree[d] to pay Attorneys Hartman, Chartered $15.00 per member, per month for the provision of said Legal Services. Said monies [were] to be paid quarterly [to Hartman] on January, April, July and October 1, 2012." *Id.* at ¶ 2. The Agreement also stated that "Attorneys Hartman has agreed to undertake the representation of seven (one of these officers has retained other counsel) who were charged prior to her representation." *Id.* at ¶ 1(h). Lastly, the Agreement provided that "[t]he members understand that if Attorneys Hartman deems there to be a conflict other counsel will have to be retained for those with whom the conflict exists." *Id.* ¶ 1(h).

On March 22, 2013, Hartman filed this civil action on behalf of Plaintiffs who are patrol or police officers for

3

the Township of Pennsauken against Coffey and Probasco, amongst others. Compl., Doc. No. 1. Both Plaintiffs and Defendants are members of the FOP. Compl. ¶ 25; Coffey Decl. ¶ 2; Declaration of Michael Probasco ("Probasco Decl.") ¶ 2, Doc. No. 29-5. On April 1, 2013, Coffey wrote to the President of the FOP, Matthew Henkel ("Henkel") advising him that he learned of the lawsuit filed against him and asked Henkel to have Hartman contact him. Coffey Decl. ¶ 9, Ex. C. On April 5, 2013, Coffey declared that he received a copy of the Complaint in this matter and learned that Hartman was the attorney representing the Plaintiffs in the lawsuit against him. Coffey Decl. ¶ 10. On April 5, 2013, Coffey wrote to Henkel and indicated that it appeared that Hartman has a conflict. *Id*. ¶ 11, Exh. D.  Coffey copied Hartman on the letter. *Id.*  In a letter dated April 8, 2013 to Hartman, Coffey stated that he reviewed the Legal Services Agreement and indicated that "it appears that you are obligated to provide me with legal services if I have questions relating to the performance of my duties. I advised FOP President Henkel that I have several questions regarding this situation." Coffey Decl. ¶ 12, Ex. E.  Coffey also noted to Hartman that it appears that there is a conflict of interest. *Id.*  In response, Hartman advised Coffey that she disagrees with his conclusion that she is "obligated to provide [him]

4

with legal services" and that she was sure that the Township would provide him with counsel. Coffey Decl., Ex. E. Further, Hartman stated in her letter to Coffey that "I have an obvious conflict in representing your interests since I am suing you." *Id.*; Declaration of Katherine D. Hartman, Esquire ("Hartman Decl.") ¶ 15, Doc. No. 36-1. Furthermore, Coffey declares that Hartman never requested his consent to represent Plaintiffs in this action. Coffey Decl. ¶ 14.

Similarly, Probasco, by letter dated April 16, 2013, requested to consult with Hartman regarding the lawsuit. Probasco Decl. ¶ 7, Ex. A. Hartman responded by letter dated April 23, 2013 advising that because she filed the lawsuit naming him as a Defendant, she has an obvious conflict in representing his interests. Probasco Decl., Ex. B; Hartman Decl. ¶ 15. Probasco also declares that Hartman never asked him to consent to her representation of the Plaintiffs in this case. Probasco Decl. ¶ 9. Prior to the above referenced letters sent by Coffey and Probasco to Hartman, neither had ever sought legal assistance relating to administrative and/or disciplinary matters or contacted Hartman for matters relating to the performance of their duties, a potential problem in the workplace, or because they were the target of an internal affairs investigation. Hartman Decl. ¶¶ 13, 17-18. Indeed, Hartman declares that her relationship with

5

Coffey is primarily an adversarial one, because she has cross-examined him extensively in multiple disciplinary actions.[1] *Id.* ¶ 19. Moreover, Hartman declares that she has not "had any conversation with either Chief Coffey or Lt. Probasco, or ever disclosed any information that would harm them, or used in a way adverse to their interest during this litigation." *Id.* ¶ 20.

On September 19, 2013, Plaintiffs filed an Amended Complaint. Am. Compl., Doc. No. 27. In the Amended Complaint, Plaintiffs state a claim for retaliation based upon First Amendment activity alleging that, *inter alia*, after the FOP hired Hartman as counsel, who has a reputation for being more aggressive in challenging disciplinary charges, "the Chief has refused to negotiate a resolution of charges with anyone who uses the services of that attorney. *Id*. at ¶¶ 39, 40. In the last year, the only officers who have been offered negotiated resolutions have represented themselves or hired alternate counsel." *Id*. at ¶ 40. On October 11, 2013, Defendants filed the pending Motion to disqualify Hartman and her firm, Attorneys Hartman, Chartered, from representing Plaintiffs.

---

[1] Apparently, Pennsauken police officers who are members of the FOP have obtained Hartman's legal services in response to disciplinary actions initiated by Coffey, as the Chief of Police, thus, requiring her to cross-examine him in relation to the disciplinary action instituted by him or on his behalf.

6

**DISCUSSION**

  a. **Conflict of Interest**

The first issue before the Court is whether Hartman should be disqualified due to an existing conflict of interest. Defendants have set forth many arguments on this issue. However, because the Court finds that a decision on this dispute rests upon one pivotal issue, whether or not there was an attorney-client relationship between Hartman and either Coffey or Probasco, the arguments of the parties, while reviewed and thoroughly considered, will not be set forth in great detail herein. As such, succinctly stated, Defendants argue that Hartman and her firm have violated New Jersey Rule of Professional Conduct ("RPC") 1.7 because she has brought this action against Coffey and Probasco. Defendants argue that the Legal Services Agreement, an express contract for representation, along with the December 17th letter establish that both Coffey and Probasco had an attorney-client relationship with Hartman. Additionally, Defendants contend that both Coffey and Probasco believed that Ms. Hartman and her firm were their attorneys for issues related to their jobs.[2]

---

[2] Furthermore, FOP had to pay Hartman and her firm $15.00 per member per month. Coffey Decl., Ex. B ¶ 3. In this regard, Coffey and Probasco declare that they both pay monthly dues to the FOP for various services, including prepaid legal services. Probasco Decl. ¶¶ 3-4;

On the other hand, Plaintiffs first argue that no conflict exists because there has never been an attorney-client relationship between Hartman and Coffey or Probasco. Plaintiffs argue that the Legal Services Agreement was between Hartman and the FOP and only provided the members access to legal services. Further, the December 17th letter was Hartman's attempt to introduce herself to members of the FOP, provide her contact information, and recite the circumstances upon which the members should contact her for purposes of legal services.[3] Lastly, Hartman declares that at no time prior to the filing of this lawsuit did either Coffey or Probasco attempt to utilize her services.[4]

---

Coffey Decl. ¶¶ 3-4.  Neither party has established that $15.00 of each member's dues goes to Hartman and this is likely not the case since other counsel was made available to Probasco and Coffey in this instance.

[3] Plaintiffs have provided an ethics opinion from David H. Dugan, III, Esquire, finding that Coffey and Probasco were not clients of the firm as they were simply eligible to be considered for pre-paid representation.  However, Dugan did not cite any ethics decisions nor did he mention the December 17th letter in rendering his decision that there was no attorney-client relationship between Hartman and Defendants.  As such, the Court requested an amended opinion to address these concerns.  On June 18, 2014, the Court received correspondence from Plaintiffs attaching an e-mail from Dugan to Hartman which indicated that he reviewed the December 17th letter and it did not change his opinion.  The Court did not receive an amended opinion which referenced ethics decisions or any analysis as to why the December 17th letter did not alter Dugan's opinion.  As such, the Court has opted not rely on said opinion.

[4] Indeed, Plaintiffs provide a certification from Henkel who declares that when they have a contract for a legal service plan and a conflict arises, a different attorney is provided to the member.  Declaration of Matthew Henkel ("Henkel Decl."), Doc. No. 36-2.  In this instance, when it became apparent that there was a conflict between Hartman and Probasco and Coffey, Henkel declares that arrangements were made for Coffey and Probasco to consult with another attorney.  *Id*. ¶ 8.

8

In this district, courts look to the New Jersey Rules of Professional Conduct with regard to issues of professional ethics. L Civ. R. 103.1(a). "When interpreting the RPC, the Court looks to New Jersey's state courts' interpretation of the RPC as primary authority and modifies it when required by federal law." *Delso v. Trustees For Ret. Plan For Hourly Employees of Merck & Co., Inc.*, No. 04-3009, 2007 WL 766349, at *5 (D.N.J. Mar. 6, 2007). With regard to the pending Motion seeking to disqualify Plaintiffs' counsel, Defendants bear the burden of "proving that disqualification is appropriate because the RPC was violated." *Id*. Motions to disqualify are disfavored and are considered a drastic measure, as such, the court must closely scrutinize the facts to ensure a just result. *See Montgomery Academy v. Kohn*, 50 F. Supp. 2d 344, 349 (D.N.J. 1999). Moreover, disqualification determinations are highly fact-specific and the court must approach "such problems with a keen sense of practicality as well as a precise picture of the underlying facts." *Id.* In deciding motions to disqualify, the court must balance the "sacrosanct" privacy of the attorney-client relationship and the right of a party to proceed with counsel of its choice. *Id.* at 349-350. In this case, Defendants assert that Hartman should be disqualified from this case

because her representation of Plaintiffs would violate RPC 1.7(a) which provides, in pertinent part:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client;

RPC 1.7(a)(1). It follows that before the above-referenced rule can be applied and disqualification considered, an attorney-client relationship had to exist. Thus, the preliminary issue this Court must consider is whether or not there was an attorney-client relationship between Hartman and either Coffey or Probasco by way of the Legal Services Agreement and the December 17th letter.

After careful consideration, the Court finds that there was never an attorney-client relationship, either explicit or implied, between Hartman and either Coffey or Probasco. First, neither the Legal Services Agreement nor the December 17th letter created an attorney-client relationship. "[T]he attorney-client relationship begins with a non-lawyer's reliance on the professional skills of an attorney, who, in turn, knows of this reliance and accepts responsibility for it." *Delso*, 2007 WL 766349 at *7. "The relationship must be a mutually aware, consensual relationship." *Id*. To this end, "[t]he client must demonstrate from an identifiable

10

action or manifestation, reliance on an attorney in his professional capacity" and "[t]o complete the relationship, the attorney must accept professional responsibility for the undertaking." *Id*.

Here, the Legal Services Agreement was entered into between Hartman and the FOP to ensure that the FOP members had access to legal services in the event that an incident anticipated by said Agreement arose. It did not create an attorney-client relationship between Hartman and each member of the FOP en masse. To the contrary, the Agreement merely provided the mechanism by which the members of the FOP would have access to legal services, however, as contemplated by the Agreement, the member had to engage in some action or manifestation establishing the need for said service.[5] *See, e.g., U.S. v. Fisher*, 692 F. Supp. 488, 491-93 (E.D. Pa. 1998)(no attorney-client relationship where individual union members were merely **eligible** to receive advice from a designated attorney pursuant to a prepaid legal services fund)(emphasis added). Thus, no attorney-client relationship would have been created prior to the point where an event

---

[5] The Agreement provides that Hartman would act as counsel to members who "**require** legal assistance" and additionally indicates that Hartman would provide legal services "**if**" certain events occur, as outlined in the Agreement, requiring legal assistance. Thus, the Agreement anticipates that certain conditions precedent had to occur before legal representation would even be necessary.

11

and/or incident anticipated by the Agreement occurred and the member contacted Hartman to secure her legal services regarding same.[6] At that point, barring a conflict, Hartman would provide legal services as anticipated by the Agreement thereby establishing the attorney-client relationship.

Similarly, the December 17th letter does not create an attorney-client relationship. While the Court was initially concerned by the use of the word "retained" in the letter as supporting the existence of an attorney-client relationship, the use of said term does not, and cannot, transform the letter, which is nothing more than an introductory letter, to that of a retainer agreement. Apart from the use of said term, the letter merely provides Hartman's contact information to FOP members in the event that they required

---

[6] Notably, cases cited by Defendants in support of the Motion highlight some action taken by both the client and the attorney which provided the basis for concluding that an attorney-client relationship had been established. *See, e.g.*, *Montgomery Acad. v. Kohn*, 82 F. Supp. 2d 312, 317 (D.N.J. 1999)(attorney-client relationship established based upon confidential communications); *Petit-Clair v. Nelson*, 344 N.J. Super. 538, 544 (App. Div. 2001)(attorney plaintiff who represented two corporations deemed to have attorney-client relationship with defendants, owners of corporation, where defendants relied on attorney plaintiff's guidance and advice, attorney plaintiff had previously represented one of the defendants in an unrelated matter, and defendants engaged in confidential communications with attorney plaintiff); *Estate of Spencer v. Gavin*, 400 N.J. Super. 220 (App. Div. 2008)(attorney-client relationship between attorney and estate clients in formation of a foundation on behalf of the estate because, *inter alia*, the foundation could not have been the attorney's client during the foundation's formation because same did not exist).

legal services related to incidents anticipated by the Agreement. To find to the contrary would only serve to elevate form over substance, as all the facts before the Court demonstrate that there was no attorney-client relationship between Hartman and Probasco or Coffey. Significantly, prior to the filing of this lawsuit, neither Coffey or Probasco sought legal advice or services from Hartman; she never received any confidential information from either Coffey or Probasco; and, notably, Hartman characterizes her relationship with Coffey as "adversarial" in that she has cross-examined him many times during her representations of clients in connection with disciplinary matters. As the case law dictates, this Court must consider this issue with a keen sense of practicality and, even with existence of the Agreement and the December 17th letter, these particular facts clearly establish that neither Coffey nor Probasco ever had an attorney-client relationship with Hartman.

Second, an implied attorney-client relationship does not exist either. To establish an implied attorney-client relationship "a party must show (1) that it submitted confidential information to a lawyer, and (2) that it did so with the reasonable belief that the lawyer was acting as the party's attorney." *Montgomery Academy*, 50 F. Supp. 2d at 350. Here, neither Coffey nor Probasco ever sought Hartman's

13

services prior to the filing of this litigation. To this end, it is undisputed that neither Defendant provided confidential information to Hartman. The fact that Defendants contacted Hartman after this litigation was filed and she informed them both that she could not represent them due to a conflict is of no moment, as it certainly did not create an attorney-client relationship. Again, the correspondence in this regard was strictly limited to informing Defendants that she could not serve as their attorney due to a conflict. Hartman did not meet with either Defendant and no confidential information was exchanged. Importantly, the Agreement specifically provides that "[t]he members understand that if Attorneys Hartman deems there to be a conflict other counsel will have to be retained for those with whom the conflict exists." This is exactly what occurred in this instance and the FOP provided Defendants with another attorney to consult with regarding the instant civil action. As such, Hartman has not violated RPC 1.7.

   **b. Lawyer as Witness**

The remaining issue before the Court is whether or not Hartman should be disqualified because she is a necessary witness in this case. Defendants argue that Ms. Hartman cannot represent Plaintiffs without violating RPC 3.7(a), since her testimony will be necessary in light of Plaintiffs'

claim of retaliation on the grounds that Coffey refused to negotiate the resolution of disciplinary charges with any of the officers Hartman represents.  Defendants argue that Hartman would have personal knowledge as to whether Coffey refused to negotiate, which Coffey denies.  In opposition, Plaintiffs argue that Hartman's disqualification is not necessary because while RPC 3.7 does not require one to provide certainty that an attorney will have to testify to warrant disqualification, there must exist a requisite likelihood that the attorney will be a necessary witness in that the attorney can provide evidence that is not available through other means.  In this regard, Plaintiffs argue that the evidence required to demonstrate whether or not Coffey negotiated is easily obtainable through her clients, Coffey, and Township records.

Here, the Court finds that disqualification pursuant to RPC 3.7(a) is simply not necessary at this juncture. Significantly, RPC 3.7(a) states a lawyer "shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness" unless "(1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." "The explicit language of RPC 3.7(a)

15

only prohibits an attorney from acting as an 'advocate at trial.'" *Tangible Value, LLC v. Town Sports Intern. Holdings, Inc.*, No. 10-1435, 2012 WL 4660865, *3 (D.N.J. Oct. 1, 2012). Pretrial discovery has not even commenced in this case, thus, based on the plain language of RPC 3.7, Hartman's disqualification is not warranted pursuant to this particular Rule.

**CONCLUSION**

For the foregoing, the Court finds that Motion to disqualify Katherine D. Hartman, Esquire is hereby denied. First, Hartman has not violated RPC 1.7 because she did not have an attorney-client relationship with either Defendant Coffey or Probasco. Second, pursuant to the plain language of RPC 3.7, Hartman's disqualification is not warranted at this juncture.

The accompanying Order will be entered.


**June 30, 2014**                        **s/ Karen M. Williams**
Date                                     Karen M. Williams
                                         United States Magistrate Judge