<u>NOT FOR PUBLICATION</u>                    [Docket Nos. 68, 69 & 70]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

MICHAEL KILLION, et al.,

       Plaintiffs,

       v.

CHIEF JOHN COFFEY, et al.,

       Defendants.

Civil No. 13-1808 (RMB/KMW)

**OPINION**

<u>Appearances</u>:

Katherine D. Hartman
Attorneys Hartman, Chartered
505 S. Lenola Road, Suite 121
Moorestown, NJ 08057-1590
    Attorney for Plaintiffs

Francis X. Manning
Stradley, Ronon, Stevens & Young, LLP
LibertyView
457 Haddonfield Road, Suite 100
Cherry Hill, NJ 08002
    Attorney for Defendants John Coffey and Michael Probasco

Richard L. Goldstein
Marshall, Dennehey, Warner, Coleman & Goggin, PA
Woodland Falls Corporate Park
200 Lake Drive East, Suite 300
Cherry Hill, NJ 08002
    Attorney for Defendants Rick Taylor, Betsy McBride, John
    Kneib, John Figueroa, Ed Growchowski, and the Township of
    Pennsauken

William P. Flahive
24 Arnett Avenue, Suite 103
Lambertville, NJ 08530
    Attorney for Defendant Jack Killion


**BUMB**, United States District Judge:

This matter comes before the Court upon three motions to dismiss the Amended Complaint: the Motion to Dismiss filed by Defendants John Figueroa, Ed Growchowski, John Kneib, Betsy McBride, Rick Taylor, and the Township of Pennsauken [Docket No. 68], the Motion to Dismiss filed by Defendants John Coffey and Michael Probasco [Docket No. 69], and the Motion to Dismiss filed by Defendant Jack Killion [Docket No. 70].  As the Defendants explicitly rely on each other's arguments, the motions will be addressed jointly.  For the reasons set forth below, the motions to dismiss will be granted.  The Plaintiffs, however, will be granted leave to amend their complaint one final time to cure the deficiencies identified herein.

## I.    Factual and Procedural Background[1]

Plaintiffs Michael Killion, Michael Biazzo, Douglas Foster, Socrates Kouvatas, Erik Morton, William Hertline, and Mark

---

[1] The facts recited herein are derived from the Plaintiffs' Amended Complaint, which the Court must accept as true for the purpose of these motions to dismiss.  See McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009 ("In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them.") (internal quotation marks and citations omitted).  Additionally,

Bristow are seven police officers employed by the Pennsauken
Police Department.  The Plaintiffs are active members of the
union representing Pennsauken police officers, the Fraternal
Order of Police ("FOP 3"), and vocal and outspoken supporters of
the implementation of twelve hour shifts at the Pennsauken
Police Department.  Shortly after joining the Pennsauken Police
Department in 2001, for example, Plaintiff Kouvatas began
researching the efficiency of twelve hour shifts and authored a
position paper supporting their implementation.  He also shared
his research with co-workers.  Aside from this example, however,
it is largely unknown to this Court specifically how the
Plaintiffs demonstrated their support for the twelve hour
shifts.

        Throughout 2010 and early 2011, negotiations took place
between the FOP 3 and the police administration regarding the
implementation of twelve hour shifts.  In February 2011, after a
vote, the Pennsauken Police Department instituted twelve hour
shifts for its officers.

        Prior to their support of the twelve hour shifts,
allegedly, none of the Plaintiffs received discipline of any
kind.  After their opinions were made known, however, each

---

as the Court writes only for the parties, it assumes the
reader's familiarity with the facts and recites only those
relevant to the decision herein.

Plaintiff alleges he was subjected to discipline and other allegedly retaliatory actions by members of the police administration, including Defendants Chief Coffey and Lieutenant Probasco.  These actions range from Chief Coffey giving the Plaintiffs the "silent treatment" to suspension following an internal affairs investigation and a formal disciplinary proceeding.  According to the Plaintiffs, other officers who were not vocal proponents of the twelve hour shifts are treated more civilly by Chief Coffey and are more leniently disciplined.

On May 7, 2011, Plaintiffs Killion and Biazzo were involved in a physical altercation at Pinsetters Bowling Alley and Bar while off-duty (the "Pinsetters Incident").  The other Plaintiffs, except Plaintiff Morton, were also involved in the incident in varying capacities.  After the altercation, Plaintiffs Killion and Biazzo left the bar.  Shortly thereafter, ten officers responded to the scene.  The next day, Chief Coffey instituted an internal investigation into the Pinsetters Incident.  Subsequently, Plaintiffs Killion, Biazzo, Foster, Hertline, Kouvatas, and Bristow were charged with disciplinary infractions.  Disciplinary hearings were held and the hearing officer recommended that Plaintiffs Killion, Biazzo, Foster, and Hertline each receive thirty day suspensions and that Plaintiffs Kouvatas and Bristow each receive five day suspensions.  The Township Public Safety Director accepted the recommendations.

Plaintiffs Killion, Biazzo, Foster, and Hertline, who had each received "major" discipline, appealed to the New Jersey Civil Service Commission, which assigned the appeals to the Office of Administrative Law.  After an additional hearing, Administrative Law Judge Masin affirmed the four suspensions.  Judge Masin also discredited the officers' attempt to argue that Chief Coffey instituted the disciplinary actions against them in retaliation for their support for the twelve hour shifts.  The four Plaintiffs appealed this decision to the Superior Court of New Jersey, Appellate Division.  The appeal is currently pending.

On January 25, 2012, the Plaintiffs sent a letter to the Pennsauken Township Committee informing the Committee of what they believed was Chief Coffey's policy of discriminating against supporters of the twelve hour shifts.  The Committee took no action to investigate the allegations or to stop the alleged discrimination.

On March 22, 2013, the Plaintiffs filed this lawsuit against Chief Coffey, Lieutenant Probasco, the Township of Pennsauken, each of the Township Committee's members, and the Township Administrator, Ed Growchowski, alleging that the Defendants have unlawfully retaliated against them for exercising their First Amendment rights.[2]  The Amended Complaint

---

[2] Defendants state that "[i]t is unclear whether Plaintiffs are suing the Police Department as a separate legal entity."

alleges violations of the Plaintiffs' First Amendment rights under the United States Constitution and the New Jersey Constitution, in violation of Section 1983 (Count I) and the New Jersey Civil Rights Act (Count II). The Amended Complaint also seeks punitive damages against all the Defendants (Count III). The Defendants have moved to dismiss the Amended Complaint on various grounds, including failure to state a claim, collateral estoppel, statute of limitations grounds, and Younger abstention.

## II.  Motion to Dismiss Standard

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550

---

Township Motion, at 2 n. 1 [Docket No. 68]. As the Court reads the Amended Complaint, the Plaintiffs do not attempt to sue the Pennsauken Police Department separately. The Police Department is not listed in the case caption and, although it is described under the heading "Parties" in the Amended Complaint, the Police Department is not listed as a Defendant. See Am. Compl. ¶ 10 [Docket No. 27]. To the extent that the Plaintiffs do seek to assert claims against the Police Department separately, however, those claims are dismissed with prejudice. The Defendants are correct that "a police department is not a separate legal entity that can be sued." Township Motion, at 2. "[A] police department is not a 'person' subject to suit under 42 U.S.C. § 1983 pursuant to Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 688–90 (1978)." Hannah v. Bridgewater Police Dep't, 2014 WL 4272759, at *2 (D.N.J. Aug. 28, 2014).

U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 663.  "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss.  Id. at 678.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, a district court should conduct a three-part analysis.  See Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'"  Id. (quoting Iqbal, 556 U.S. at 675).  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 680.  Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Id.

Rule 12(b)(6) requires the district court to "accept as true all well-pled factual allegations as well as all reasonable

inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n. 1 (3d Cir. 2012).  Only the allegations in the complaint and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" are taken into consideration. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994) (citing Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).

Defendants further move for dismissal under Younger v. Harris, 401 U.S. 37 (1971).  "Strictly speaking, Younger abstention is not analyzed under either Rule 12(b)(1) or 12(b)(6)."  Knox v. Union Twp. Bd. of Educ., 2015 WL 769930, at *5 n. 7 (D.N.J. Feb. 23, 2015); see also Carter v. Doyle, 95 F. Supp. 2d 851, 855 n. 8 (N.D. Ill. 2000) (noting that courts have allowed Younger abstention challenges to be raised in both Rule 12(b)(6) or Rule 12(b)(1) motions "[b]ecause a motion to dismiss for lack of subject matter jurisdiction based on abstention does not fit neatly into either of the two types of jurisdictional attacks generally raised under Rule 12(b)(1)—the challenge is neither to the facial insufficiency of the complaint or the factual basis pleaded in the complaint[.]").

That being said, the Third Circuit has explained that a motion to dismiss under Younger is "in the nature of" a Rule

12(b)(6) motion to dismiss.  Gwynedd Properties, Inc. v. Lower Gwynedd Twp., 970 F.2d 1195, 1206 (3d Cir. 1992) (citing Heritage Farms, Inc. v. Solebury Twp., 671 F.2d 743, 745 (3d Cir. 1982)).  Courts in this District have repeatedly reviewed a Younger motion to dismiss as a Rule 12(b)(6) motion.  See, e.g., Knox, 2015 WL 769930, at *5 n. 7; Local 54 Patrolman's Benevolent Ass'n v. Fontoura, 2007 WL 4165158, at *2-3 (D.N.J. Nov. 19, 2007); Ocean Grove Camp Meeting Ass'n Of The United Methodist Church v. Papaleo, 2007 WL 3349787, at *1 (D.N.J. Nov. 7, 2007) aff'd in relevant part 339 F. App'x 232 (3d Cir. 2009). This Court will do the same.

## III. Analysis

### A. Younger Abstention

Because the Defendants' Younger challenge questions this Court's jurisdiction to hear the matter, the Court will address it first.  The Defendants contend that any claims relating to the Pinsetters Incident must be dismissed pursuant to the doctrine developed in Younger because four of the Plaintiffs are currently involved in a pending appeal before the New Jersey Superior Court related to this incident and the other two involved Plaintiffs failed to perfect an appeal of the administrative findings against them.  The Defendants further urge the Court to dismiss under Younger all claims related to Plaintiff Killion's alleged sick time misuse, Plaintiff Biazzo's

involvement in an incident at Bryson's Pub in 2012, Plaintiff
Morton's failure to return to work, and Plaintiff Foster's
domestic incident.  See Coffey Motion at 42 [Docket No. 69].

In Younger, the Court held that "federal courts should
abstain from enjoining state criminal prosecutions, because of
principles of comity and federalism, unless certain
extraordinary circumstances exist."  Marran v. Marran, 376 F.3d
143, 154 (3d Cir. 2004) (citing Younger, 401 U.S. at 49-54).
The Younger abstention doctrine has been extended to "particular
state civil proceedings that are akin to criminal prosecutions,
or that implicate a State's interest in enforcing the orders and
judgments of its courts."  Sprint Commc'ns, Inc. v. Jacobs, 134
S. Ct. 584, 588 (2013) (citing New Orleans Public Service, Inc.
v. Council of City of New Orleans, 491 U.S. 350, 368 (1989)
("NOPSI") (other internal citations omitted)).  The Supreme
Court in Sprint sought to "clarify and affirm that Younger
extends to the three exceptional circumstances identified in
NOPSI, but no further."  Id. at 593-94.

In Sprint, the Supreme Court also clarified its ruling in
Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457
U.S. 423 (1982) ("Middlesex").  It explained that, when
Middlesex is divorced from its quasi-criminal context, courts
have wrongly used it to extend the Younger doctrine whenever
three conditions are met: "(1) there is an ongoing state

judicial proceeding, which (2) implicates important state interests, and (3) . . . provide[s] an adequate opportunity to raise [federal] challenges." Id. at 593.  Such a reading of Middlesex incorrectly extends Younger "to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest."  Id.

Importantly, the Supreme Court held that, "even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the exception, not the rule." Id. (internal quotation marks omitted).  The Supreme Court "ha[s] cautioned . . . that federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not 'refus[e] to decide a case in deference to the States.'"  Id. at 588 (quoting NOPSI, 491 U.S. at 368).  "Abstention is not in order simply because a pending state-court proceeding involves the same subject matter."  Id.

Younger abstention is appropriate in the context of "civil enforcement proceedings" that are "akin to a criminal prosecution in important respects."  Sprint, 134 S. Ct. at 592 (internal citations and quotations omitted).  Such quasi-criminal civil enforcement proceedings are generally "initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act."  Id.  Likewise, a

state party is customarily a party to the state proceedings and
often, if not always, initiates the state action.  Id.  These
types of civil enforcement proceedings often commence with
internal investigations that "culminat[e] in the filing of a
formal complaint or charges."  Id.

At issue here are police disciplinary proceedings, first
heard at the administrative level, which either could have been
or have been appealed to the New Jersey Superior Court.  Such
disciplinary proceedings fall into the category of civil
enforcement proceedings from which federal courts may abstain
under Younger.  See Gonzalez v. Waterfront Comm'n of New York
Harbor, 755 F.3d 176, 182 (3d Cir. 2014) ("In sum, we conclude
that the state disciplinary proceeding involved in this appeal
bears the hallmarks of the quasi-criminal proceedings discussed
by the Supreme Court.  It was initiated by a state actor
following an internal investigation and the filing of formal
charges for the purpose of sanctioning Gonzalez for his wrongful
actions.  Given these circumstances, we hold that Gonzalez's
disciplinary hearing and the pending State Appeal are indeed
'akin to a criminal prosecution.'").

However, this does not end the Younger analysis.  This
Court must next consider the factors set forth in Middlesex.
See Sprint, 134 S. Ct. at 593; Gonzalez, 755 F.3d at 182-83.
The Middlesex factors include: (1) whether there is an ongoing

12

state judicial proceeding, (2) whether that proceeding implicates important state interests, and (3) whether the state proceeding provides an opportunity for the federal plaintiff to raise his federal claims.  Gonzalez, 755 F.3d at 182-83.

The first Middlesex factor is met.  There are ongoing judicial proceedings regarding each of the Plaintiffs.  With regard to the four Plaintiffs involved in the Pinsetters Incident appeal, Killion, Biazzo, Foster, and Hertline, it is indisputable that there is an ongoing state court proceeding since the appeal is currently pending before the New Jersey Superior Court.  The remaining Plaintiffs, however, are also involved in "pending" state administrative proceedings for purposes of a Younger abstention analysis.  See O'Neill v. City of Philadelphia, 32 F.3d 785, 791 (3d Cir. 1994).  These Plaintiffs have been involved in administrative disciplinary proceedings that have been resolved without resort to the state courts.  Even though these proceedings have technically concluded, the Plaintiffs did not exhaust their state judicial remedies.  "[S]tate proceedings remain 'pending,' within the meaning of Younger abstention, in cases such as the one before us, where a coercive administrative proceeding has been initiated by the State in a state forum, where adequate state-court judicial review of the administrative determination is available to the federal claimants, and where the claimants have

chosen not to pursue their state-court judicial remedies, but have instead sought to invalidate the State's judgment by filing a federal action." Id.

The second Middlesex factor is also present.  The Township of Pennsauken, through its police department, instituted the disciplinary proceedings at issue here in an effort to regulate the conduct of its police force.  This Court finds that "maintaining the integrity, public confidence, and goodwill of [] law enforcement" is an important state interest.  See Gonzalez, 755 F.3d at 183.

With regard to the third Middlesex factor, however, this Court finds that the disciplinary proceedings did not afford the Plaintiffs an adequate opportunity to raise their constitutional claims.  While their present constitutional claims may be "analogous to defenses that [the Plaintiffs] did assert or could have asserted to the [disciplinary charges]," the record does not suggest that the Plaintiffs had any opportunity to bring claims in the state or administrative proceedings.  See Knox, 2015 WL 769930, at *6 (emphasis in original) (relying on Prevost v. Twp. of Hazlet, 159 F. App'x 396 (3d Cir. 2005)).

Like the Knox court, this Court finds Prevost instructive. Prevost involved a former police officer who was terminated from the police department after a series of administrative disciplinary hearings, which were appealed to the New Jersey

Superior Court.  While his appeal was pending, the former police officer sued in federal court under Section 1983.  The district court dismissed the suit under Younger.  On appeal, the Third Circuit found abstention inappropriate and reversed, holding that "[t]he state administrative proceeding, while based on the same factual circumstances as this suit, did not afford [the plaintiff] the opportunity to raise the claims he argues here." Prevost, 159 F. App'x at 398.  The Third Circuit explained:

> First, the only party to the state administrative proceeding was the Township, while the defendants in this case include the Township and several of its employees. Second, the state administrative proceeding was limited to the question of whether the Township's termination of Prevost was in accordance with state statutes and regulations.  Here, Prevost argues that the defendant employees of the Township manipulated state regulations to deprive him of employment, in violation of his constitutional rights, a claim that does not fall within the scope of the administrative hearing.  Third, the only possible relief from the state administrative proceeding was reinstatement and limited compensatory damages.  This case includes a § 1983 action seeking punitive and compensatory damages that are not available in the state administrative proceeding.  Prevost's suit also seeks injunctive relief to restrain the Township and its employees from publishing information about Prevost and the state administrative proceeding could neither consider this claim nor award injunctive relief.

Id.  These considerations apply with equal force to the case at bar.  Of the Defendants in the present federal action, only the Township of Pennsauken is a party to the currently pending Pinsetters Incident appeal and the administrative disciplinary proceedings, whereas the Township, each of its committee

members, Chief Killion, and Lieutenant Probasco are all parties
to the instant litigation.  Similarly, at issue in the
administrative proceedings was the propriety of the police
officers' action, not whether the officers' constitutional
rights were violated.  To the extent the officers were able to
raise the question of retaliation for protected activity in
violation of the First Amendment, they were only able to do so
as a defense, not as an affirmative claim.  See Knox, 2015 WL
769930, at *6.  Finally, the Plaintiffs here seek compensatory
and punitive damages, which are not available in the state
administrative proceedings.  For these reasons, the Court holds
that Younger abstention is inappropriate in this case.

### B. Collateral Estoppel

The Defendants next argue that Plaintiffs Killion, Biazzo,
Foster, and Hertline are collaterally estopped from litigating
retaliation claims based on the discipline they received after
the Pinsetters Incident because "ALJ Masin made the crucial
factual finding that the discipline Plaintiffs Killion, Biazzo,
Foster, and Hertline incurred was not tainted by unlawful
retaliatory motives."  Defs. Reply Br. at 13 [Docket No. 74].

Collateral estoppel, or issue preclusion, prevents a party
from re-litigating an issue that has already been actually
litigated.  Peloro v. U.S., 488 F.3d 163, 174 (3d Cir. 2007).
Under 28 U.S.C. § 1738, this Court must give full faith and

credit to state court judgments.  Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).  Federal courts must also give preclusive effect to state administrative decisions that have been reviewed by a state court.  Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993).  "However, in section 1983 cases, only state administrative factfinding is entitled to preclusive effect in the federal courts when the agency ruling remains unreviewed by state courts."  Id. (emphasis added).  Since the ALJ's decision regarding the Pinsetters Incident is currently on appeal, it is considered unreviewed by the state court and only the ALJ's factual findings may be given preclusive effect, assuming the collateral estoppel factors are otherwise met.

This Court applies New Jersey law in determining whether the Plaintiffs should be collaterally estopped from re-litigating ALJ Masin's factual findings associated with the Pinsetters Incident.  Delaware River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 573 (3d Cir. 2002).  Under New Jersey law, collateral estoppel bars re-litigation of an issue if: (1) the issue to be precluded is identical to the issue previously decided; (2) the issue was actually litigated in a prior proceeding; (3) the prior court issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom collateral

estoppel is asserted was a party or in privity with a party to the earlier proceeding.  Id.  See also Winters v. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 85 (2012).

The Defendants urge the Court to dismiss all claims related to the Pinsetters Incident appeal under Winters.  There, the New Jersey Supreme Court held that a federal plaintiff who argued retaliation as "a central theme of his argument" in an administrative proceeding challenging discipline imposed upon him was collaterally estopped from bringing a separate federal action alleging retaliation.  Winters, 212 N.J. at 88 ("Retaliation was a central theme of his argument and that he chose not to present there his comprehensive proof of that claim does not afford him a second bite at the apple in this matter.").  Because Plaintiffs Killion, Biazzo, Foster, and Hertline raised the possibility of retaliation during the proceedings before ALJ Masin, the Defendants contend, they are precluded from bringing any First Amendment retaliation claims in this action stemming from the Pinsetters Incident.  The Court disagrees.

Unlike the plaintiff in Winters, the Plaintiffs here did not make retaliation a central theme of their defense during the administrative proceedings before ALJ Masin.  See May v. Borough of Pine Hill, 2013 WL 663702, at *3 (D.N.J. Feb. 22, 2013).  The Defendants direct the Court to ALJ Masin's findings, which

indicate that the question of impermissible retaliation was raised.  See, e.g., Coffey Motion at 37-39.  Further, the Defendants argue that "ALJ Masin made the crucial factual finding that the discipline Plaintiffs . . . incurred was not tainted by unlawful retaliatory motives."  Defs. Reply Br. at 13.  ALJ Masin's finding, however, actually reads: "I **FIND** that while the Department did not comply with several elements of the Guidelines, these failures did not taint the process or deprive the officers of a fair investigation or a fair hearing."  ALJ Decision, at 68 [Docket No. 69-6] (emphasis in original).  He did not, however, make any explicit findings regarding the Plaintiffs' retaliation arguments.

ALJ Masin observed that the Plaintiffs "suggested" that Chief Coffey was improperly retaliating against them, but that there was "no substantive evidence to support that Chief Coffey allowed any disagreement with them on that ground to adversely affect" the investigation and decision to impose discipline. Id.  A mere suggestion of retaliation, however, is insufficient to persuade this Court that the issue of First Amendment retaliation in this federal action was actually litigated in the administrative proceeding and that the determination of that issue was essential to ALJ Masin's decision.  See May, 2013 WL 663702, at *3 ("While May included elements of retaliation in her arguments during the administrative hearing, the Court is

reluctant to find that her claim is precluded where retaliation was not the central element of her defense."). Likewise, given that ALJ Masin's ultimate finding related to the question of whether the Police Department failed to follow the Attorney General Guidelines and other internal policies, not the question of retaliation, this Court finds that any determinations regarding retaliation were not essential to the ALJ's decision.

Furthermore, even if ALJ Masin did make an explicit finding that there was no impermissible retaliation tainting the discipline imposed upon the Plaintiffs after the Pinsetters Incident, this is arguably a legal conclusion that remains unreviewed by the state court and is not entitled to preclusive effect. See Edmundson, 4 F.3d at 189. With due respect to ALJ Masin and the Civil Service Commission, which adopted his decision, this Court agrees with the Third Circuit "that constitutional adjudication is not within [their] competence so as to bar a federal court from re-examining that legal issue. The Commission simply does not have the background or experience to finally decide issues that give pause even to federal courts despite their familiarity with that area of the law." Id. at 193 (internal citations omitted); see also Burns v. City of Bayonne, 2014 WL 4662189, at *14 (D.N.J. Sept. 18, 2014).

## C. Statute of Limitations

Section 1983 claims in New Jersey are subject to a two-year statute of limitations.  O'Connor v. City of Newark, 440 F.3d 125, 126-27 (3d Cir. 2006).  The Defendants contend that all allegedly retaliatory acts that took place prior to March 22, 2011 are time-barred and may not be considered by the Court. The Court agrees.[3]

"First Amendment retaliation claims are always individually actionable, even when relatively minor. . . . A First Amendment retaliation claim will lie for any individual act which" is sufficient to deter a person of ordinary firmness from exercising their First Amendment rights.  Id. at 128-29. Furthermore, separate acts of alleged retaliation "cannot be resurrected by being aggregated and labeled continuing violations."  Id. at 129; see also Falat v. Cnty. of Hunterdon, 2014 WL 6611493, at *6-8 (D.N.J. Nov. 21, 2014).  Since the alleged retaliatory acts that occurred before March 22, 2011 were all individually actionable, they are now untimely and will not be considered by the Court under a continuing violation theory.

---

[3] The Court notes that the Plaintiffs entirely ignored the Defendants' statute of limitations argument in their Opposition Brief, and instead conceded that "First Amendment retaliation claims are always individually actionable, even when relatively minor."  See Pls. Opp. Br. at 20 [Docket No. 73].

Any First Amendment retaliation claims premised upon acts taking place prior to March 22, 2011 will be dismissed with prejudice.[4]  To the extent that the Plaintiffs have not identified in the Amended Complaint when a given act of alleged retaliation took place, claims premised upon these acts will be dismissed without prejudice since the Court is unable to determine whether or not the claims are time-barred.  See, e.g., Am. Compl. ¶¶ 106 ("Lieutenant Probasco repeatedly told individuals that Foster was at thief and a criminal."), 148 ("On one occasion the Chief made Morton prepare a memo as to why he gassed his patrol unit at a specific time."), 164 ("Hertline was denied his requested beat."), 173 ("Bristow participated in a Captain's interview . . . The Captain responded in a demeaning manner . . .").

### D. Failure to State a Claim

To state a claim under Section 1983 for violation of First Amendment rights, the Plaintiffs must allege facts showing: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the

---

[4] Although these allegations cannot support actionable claims, given the statute of limitations, the allegations may be included for evidentiary support or background information.

22

retaliatory action.  Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).

### i. Constitutionally Protected Conduct

Police officers, as public employees, "do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006).  To establish that they have engaged in constitutionally protected conduct, the Plaintiffs must allege (1) that they acted or spoke as citizens, regarding (2) a matter of public concern, and (3) that the police administration did not have an adequate justification for treating them differently from any other member of the general public as a result of their conduct.  Hill v. Borough of Kutztown, 455 F.3d 225, 241-42 (3d Cir. 2006) (citing Garcetti, 547 U.S. at 418).

In evaluating whether a matter is of public concern, courts consider whether "it is important to the process of self-governance that communications on this topic, in this form and in this context, take place." Zelinski v. Penn. State Police, 108 F. App'x 700, 707 (3d Cir. 2004).  A public employee's speech is not protected, however, even if it touches on a matter of public concern, if the employee spoke not as a private citizen, but pursuant to their official duties.  Gorum v.

23

Sessoms, 561 F.3d 179, 185 (3d Cir. 2009).  "Factors considered [in this analysis] include whether the speech fell within the individual's job duties, whether it was related to special knowledge or experience acquired on the job, whether it was made inside or outside the work place, and whether it concerned the job's subject matter."  Houston v. Twp. of Randolph, 2013 WL 1192579, at *11 (D.N.J. Mar. 21, 2013).

Before this Court can even consider whether the Plaintiffs' conduct or speech was protected under the aforementioned standard, however, the Court must first identify the conduct or speech in which the Plaintiffs engaged.  "Plaintiffs in First Amendment retaliation cases can sustain their burden of proof only if their conduct was constitutionally protected, and, therefore, only if there actually was conduct."  Ambrose v. Twp. of Robinson, Pa., 303 F.3d 488, 495 (3d Cir. 2002) (emphasis in original); Fogarty v. Boles, 121 F.3d 886, 891 (3d Cir. 2002) ("the absence of speech . . . is fatal to the plaintiff's [First Amendment retaliation] claim").

Here, the Plaintiffs have neglected to identify what the Plaintiffs actually did or said to display their support of the twelve hour shifts.  The Amended Complaint, in conclusory fashion, simply states that "all plaintiffs were active and vocal supporters of the implementation of twelve hour shifts in the Township of Pennsauken."  Am. Compl. ¶ 26.  The Amended

Complaint repeatedly references the Plaintiffs' "support" for the twelve hour shifts.  See, e.g., id. at ¶¶ 50, 82, 102, 120. Yet there are nearly no allegations establishing what acts or speech the Plaintiffs engaged in to demonstrate this support. For example, Plaintiffs allege that Plaintiff Morton "work[ed] actively to obtain twelve hour shifts." Id. at ¶ 143.  Notably absent are any allegations as to what Morton's active work entailed.  Similarly, the Plaintiffs baldly allege that Plaintiff "Hertline has been an active and vocal proponent for the implementation of the twelve hour shifts," with nothing more.  Id. at ¶ 154.  Without identifying the Plaintiffs' speech or conduct that allegedly resulted in retaliation, the First Amendment retaliation claims must fail.  See Berkery v. Wissahickon Sch. Dist. Bd. of Directors, 2015 WL 5829901, at *2 (3d Cir. Oct 7, 2015) (non-precedential) (affirming dismissal of First Amendment retaliation claim where plaintiff "does not specify what speech of hers caused her suspension"). Additionally, the Plaintiffs' "perceived support" for the twelve hour shifts, without allegations of actual conduct or speech demonstrating that support, cannot sustain a First Amendment retaliation claim.  See Ambrose, 303 F.3d at 496 ("perceived support" alone "cannot form the basis of a First Amendment retaliation claim.").

To the extent that any of these conclusory statements can be considered well-pled allegations of actual conduct, the Plaintiffs have altogether failed to allege that they were speaking as private citizens, as required for a public employee to establish a constitutional violation.  See Garcetti, 547 U.S. at 417-18.  Moreover, this Court questions, without making any determinations at this juncture, whether support for the implementation of twelve hour shifts is truly a matter of public concern.  See Thomas v. Delaware State Univ., 2015 WL 5520108, at *4 (3d Cir. Sept. 21, 2015) (non-precedential) ("While it is true that union activities may sometimes touch on a matter of public concern, . . . it is not the case that all union-related grievances do[.]  [Plaintiff's] grievances related to 'working conditions and other issues in union members' employment' and [Plaintiff] offers nothing that would transform those personnel matters into issues of interest to the broader community.") (internal citations and quotations omitted).

The few instances of well-pled allegations of conduct by any of the Plaintiffs are insufficient to save the Amended Complaint.  The Plaintiffs allege that Plaintiff Kouvatas became a Pennsauken police officer in 2001 and that he "began to research the efficiency of twelve hour shifts" and authored a position paper in support shortly thereafter.  Id. at ¶¶ 127-29. Given the many years that passed between the publication of

Plaintiff Kouvatas's position paper and the first actionable acts of alleged retaliation, this cannot support a First Amendment retaliation claim.  Likewise, Plaintiff Bristow's participation in a "Captain's interview wherein he spoke highly of the need for twelve hour shifts," id. at ¶ 173, clearly involved speech made as part of his official duties, not as a private citizen, since private citizens do not participate in interviews with police captains regarding police administrative policies.  See Garcetti, 547 U.S. at 424 ("When a public employee speaks pursuant to employment responsibilities, however, there is no relevant analogue to speech by citizens who are not government employees.").  Further, the Plaintiffs do not allege that Plaintiff Bristow spoke as a private citizen during the Captain's interview.  Without more than what is presently pled, the Court holds that Plaintiff Bristow's speech in a "Captain's interview" is not protected speech as required to establish a First Amendment retaliation claim.

The Plaintiffs have failed to adequately plead constitutionally protected conduct.  Accordingly, the Plaintiffs' First Amendment retaliation claims under Section 1983 are dismissed without prejudice.  "This district has repeatedly interpreted [the New Jersey Civil Rights Act] analogously to § 1983."  Pettit v. New Jersey, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011) (collecting cases); see also Borden

v. Sch. Dist. Of Twp. Of E. Brunswick, 523 F.3d 153, 164 n. 5
(3d Cir. 2008).  Therefore, for the same reasons, the
Plaintiffs' New Jersey Civil Rights Act claims are also
dismissed without prejudice.[5]

### ii. **Retaliatory Conduct**

Although the Court will dismiss the Plaintiffs' claims
based on failure to sufficiently allege constitutionally
protected conduct, the Court will grant the Plaintiffs leave to
amend their pleadings and so will address the other required
elements to provide guidance to the parties.

To withstand a motion to dismiss, a First Amendment
retaliation complaint must allege "retaliatory action sufficient
to deter a person of ordinary firmness from exercising his
constitutional rights."  Thomas, 463 F.3d at 296.  The effect of
the alleged retaliation on a plaintiff's freedom of speech "need
not be great in order to be actionable but it must be more than

---

[5] The Court notes that the Defendants also argue that qualified
immunity applies and relieves the individual Defendants of
liability.  Because this Court will dismiss the Plaintiffs'
constitutional claims, however, it need not reach the issue of
qualified immunity at this juncture.  Similarly, since the
constitutional claims will be dismissed, the Court will also
dismiss the Plaintiffs' punitive damages claim against each
Defendant, except the Township of Pennsauken, without prejudice.
As it is well-established that no punitive damages may be
awarded against a municipality in Section 1983 actions, the
punitive damages claim against the Township of Pennsauken is
dismissed with prejudice.  See City of Newport v. Fact Concerts,
Inc., 453 U.S. 247, 271 (1981).

de minimis." Hogan v. Twp. of Haddon, 278 F. App'x 98, 103 (3d Cir. 2008) (internal citations and quotations omitted).  "[E]ven an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights" may be sufficient to constitute retaliatory action for purposes of a First Amendment retaliation claim.  See Suppan v. Dadonna, 203 F.3d 228, 234 (3d Cir. 2000) (quoting Rutan v. Republican Party, 497 U.S. 62, 76 n. 8 (1990)).  "A First Amendment retaliation claim will lie for any individual act which meets this 'deterrence threshold,' and that threshold is very low[.]"  O'Connor, 440 F.3d at 128.

The Amended Complaint consists almost exclusively of allegations of retaliatory conduct on the part of the Defendants.  While many of these allegedly retaliatory acts cannot support First Amendment retaliation claims since they are time-barred, many are timely.  The Plaintiffs allege, for example, that Plaintiff Killion was transferred to the nightshift in May 2012, although no other officer on light-duty has ever been transferred to the nightshift in the history of the Pennsauken Police Department, Am. Compl. ¶ 72, and that, in June 2011, Plaintiff Foster was forced to use holidays to attend a training session, while two other officers who also attended

the session were given training days.[6]  Id. at ¶ 109.  This Court accepts the timely allegations of retaliation as true, as it must on a Rule 12(b)(6) motion to dismiss.  While the Amended Complaint is fatally lacking in other respects, it adequately pleads retaliatory conduct as required to state a First Amendment retaliation claim.

### iii. **Causal Link**

Even if the Plaintiffs' bald and conclusory allegations regarding constitutionally protected speech were sufficient, which this Court holds they are not, the Amended Complaint must be dismissed for failure to adequately plead a causal link between the Plaintiffs' allegedly protected speech and the Defendants' allegedly retaliatory actions.  To state a claim for First Amendment retaliation, the Plaintiffs must allege causation, namely that their protected activity was the motivating factor behind the Defendants' retaliation.  Springer v. Henry, 435 F.3d 268, 275 (3d Cir. 2006).  Courts "must be diligent in enforcing these causation requirements [in Section 1983 First Amendment retaliation cases] because otherwise a public actor cognizant of the possibility that litigation might

---

[6] The Plaintiffs also allege that Chief Coffey has ceased speaking to them and, in fact, actively ignores their attempts to be cordial.  See, e.g., id. at ¶¶ 73-74, 98, 174.  Although the "deterrence threshold" is low, the Court queries whether Chief Coffey's alleged impoliteness rises to the level of actionable retaliation.

be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Furthermore, a plaintiff must allege more than just a "mere possibility of misconduct." See Iqbal, 556 U.S. at 679.

Determining whether a causal link has been adequately pled requires an inquiry into the temporal proximity between the alleged protected activity and the alleged retaliation. See Queer v. Westmoreland Cnty., 296 F. App'x 290, 293 (3d Cir. 2008). "[A] suggestive temporal proximity between the protected activity and the alleged retaliatory action can be probative of causation." Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003). However, the temporal proximity of the alleged retaliation "must be unusually suggestive of retaliatory motive before a causal link will be inferred." Id. Where the temporal proximity alone is not "unusually suggestive," "timing plus other evidence may be an appropriate test[.]" Id.

The Court is unable to assess the temporal proximity between the Plaintiffs' allegedly protected activity and the Defendants' alleged retaliation given the paucity of well-pled allegations of protected activity. Without more than conclusory statements claiming that each of the Plaintiffs was a "vocal supporter" of the twelve hour shifts, the Court cannot make any

31

determinations regarding the timing of said "vocal support" or its temporal proximity to the alleged retaliatory actions.  The one properly pled allegation of protected activity for which Plaintiffs identify a timeframe involves Plaintiff Kouvatas's position paper supporting the implementation of twelve hour shifts.  According to the Amended Complaint, Plaintiff Kouvatas authored the position paper shortly after joining the police department in 2001.  Am. Compl. ¶ 128-29.  Plaintiff Kouvatas shared his views with his coworkers on undisclosed occasions between 2001 and 2007, when he was promoted to sergeant.  Id. at ¶ 130.  Allegedly protected activity taking place even as late as 2007 cannot support any timely claims of First Amendment retaliation.  The passage of at least four years between Plaintiff Kouvatas's speech and the first actionable retaliatory acts occurring after March 22, 2011 is not probative of causation, let alone unduly suggestive of it.  See, e.g., Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (passage of two months between protected speech and alleged retaliation not unduly suggestive); Estate of Smith v. Marasco, 318 F.3d 497, 512-13 (3d Cir. 2003) (temporal proximity not unduly suggestive of retaliatory motive where protected activity took place between 1991 and 1998 and alleged retaliation began in 1999).  Not only does the Amended Complaint fail to sufficiently plead protected conduct, it also fails to

32

adequately plead a causal link between the Plaintiffs' allegedly protected activities and the Defendants' alleged retaliation and, therefore, must be dismissed.

### IV.  Conclusion

For the foregoing reasons, the Court will dismiss with prejudice all of the claims premised upon alleged retaliatory actions that took place before March 22, 2011 as barred by the applicable two-year statute of limitations.  The Court will also dismiss the Plaintiffs' punitive damages claims against the Township of Pennsauken with prejudice because no amendment to the Amended Complaint would cure the fact that no punitive damages may be awarded against municipalities in civil rights actions.  See City of Newport, 453 U.S. at 259.  The Court will dismiss the remainder of the Amended Complaint without prejudice.  Plaintiffs will, however, be granted leave to amend their pleadings within twenty-one (21) days of the entry of this Opinion in order to cure the deficiencies identified herein.  An appropriate Order shall issue on this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Dated: November 19, 2015